## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| GUARDIAN FLIGHT LLC AND MED-TRANS CORPORATION, <br><br>            Plaintiffs, <br><br>    v. <br><br> HEALTH CARE SERVICE CORPORATION <br><br>            Defendant. | Civil Action No. 3:23-cv-01861-B <br><br> Judge Jane J. Boyle |

### DEFENDANT HEALTH CARE SERVICE CORPORATION'S
### MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND SUPPORTING BRIEF

Defendant Health Care Service Corporation ("HCSC"), by and through undersigned counsel, moves to dismiss Plaintiffs Guardian Flight LLC's and Med-Trans Corporation's (collectively "Plaintiffs") complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Date: October 3, 2023         Respectfully Submitted,

                         */s/ Martin J. Bishop*
                         Martin J. Bishop
                         Texas Bar No. 24086915
                         **Reed Smith LLP**
                         2850 N Harwood Street, Suite 1500
                         Dallas, Texas 75201
                         Telephone: (469) 680-4200
                         mbishop@reedsmith.com

                         Jason T. Mayer (admitted *pro hac vice*)
                         **REED SMITH LLP**
                         10 South Wacker Drive, Suite 4000
                         Chicago, IL 60606-7507
                         Telephone: (312) 207-1000
                         jmayer@reedsmith.com

                         **ATTORNEYS FOR**
                         **HEALTH CARE SERVICE CORPORATION**

## TABLE OF CONTENTS

Page

SUPPORTING BRIEF ........................................................................................................... 1

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 3

     A.     The Problem of Surprise Medical Bills ................................................................ 3

     B.     The NSA Eliminates Patient Liability for Surprise Medical Bills and Creates a Framework for Surprise Billing Providers and Health Plans to Resolve Payment Disputes. ...................................................... 5

     C.     The Parties ......................................................................................................... 7

     D.     Plaintiffs' Complaint ......................................................................................... 9

III.    STANDARD OF REVIEW ........................................................................................ 10

     A.     Rule 12(b)(1) ..................................................................................................... 10

     B.     Rule 12(b)(6) ..................................................................................................... 11

IV.    ARGUMENT ............................................................................................................. 11

     A.     Plaintiffs Fail to State a Claim for Relief under the NSA Because the Act Is Not Privately Enforceable (Count One). ..................................... 11

     B.     Plaintiffs Lack Standing and Fail to State an ERISA Claim (Count Two). ............................................................................................................... 15

          1.     Plaintiffs Lack Standing to Bring ERISA Claims on Behalf of Patients, Who Have Not Sustained any Injury. ............................. 15

          2.     Plaintiffs Also Fail to State a Claim for ERISA Benefits Because No Plan Terms Compel HCSC to Pay Plaintiffs IDR Awards. .......... 17

     C.     Plaintiffs Fail to State a Claim for Relief for Unjust Enrichment Because Plaintiffs Did Not Provide Services for HCSC's Benefit (Count Three). ............................................................................................... 18

V.     CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001)...........................................................................11, 12, 15

*Angelina Med. Assocs. PA v. Health Care Serv. Corp.,*
506 F. Supp. 3d 425 (N.D. Tex. 2020) ...............................................2, 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................11

*Bashara v. Baptist Mem'l Hosp. Sys.,*
685 S.W.2d 307 (Tex. 1985)................................................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................11

*Cal. v. Sierra Club,*
451 U.S. 287 (1981)..........................................................................1, 13

*Cantu v. Moody,*
933 F.3d 414 (5th Cir. 2019) ...............................................................12

*Casas v. Am. Airlines, Inc.,*
304 F.3d 517 (5th Cir. 2002) ...............................................................12

*Cell Sci. Sys. Corp. v. La. Health Serv.,*
804 F. App'x 260 (5th Cir. 2020) ........................................................10

*Delancey v. City of Austin,*
570 F.3d 590 (5th Cir. 2009) ...........................................................12, 13

*Downs v. Libert Life Assur. Co.,*
No. 3:05-cv-0791-R, 2005 U.S. Dist. LEXIS 22531 (N.D. Tex. Oct. 5, 2005).....................16

*Encompass Office Solutions, Inc. v. Ingenix, Inc.,*
775 F. Supp. 2d 938 (E.D. Tex. 2011)..................................................20

*Energy Mgmt. Servs., LLC v. City of Alexandria,*
739 F.3d 255 (5th Cir. 2014) ...............................................................10

*Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.,*
894 F.3d 665 (5th Cir. 2018) ...............................................................11

*Fisher v. Blue Cross & Blue Shield of Tex., Inc.*,
    No. 3:10-cv-2652-L, 2015 U.S. Dist. LEXIS 12729 (N.D. Tex. Sept. 23, 2015) ...................20

*Foley v. Southwest Tex. HMO, Inc.*,
    193 F. Supp. 2d 903 (E.D. Tex. 2001) ....................................................................................15

*Genesis Lab. Mgmt. LLC v. United Health Grp., Inc.*,
    No. 21-cv-12057, 2023 U.S. Dist. LEXIS 38156 (D.N.J. Mar. 6, 2023) ...............................14

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)............................................................................................1, 12, 14

*Griffith v. Alcon Research, Ltd.*,
    712 F. App'x 406 (5th Cir. 2017) .......................................................................................9, 10

*GS Labs, Inc. v. Medica Ins. Co.*,
    No. 21-cv-2400, 2022 U.S. Dist. LEXIS 169307 (D. Minn. Sept. 20, 2022)..........................14

*Highmark, Inc. v. U.S.*,
    161 Fed. Cl. 240 (2022) ........................................................................................................ 8

*Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*,
    No. 5:17-cv-1016-DAE, 2018 U.S. Dist. LEXIS 151338 (W.D. Tex. Apr. 20, 2018)............17

*Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*,
    No. 3:20-cv-1675 (JBA), 2022 U.S. Dist. LEXIS 43351 (D. Conn. Mar. 11, 2022) ..............14

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*,
    No. 3:11-cv-02205-D, 2012 U.S. Dist. LEXIS 165791 (N.D. Tex. Nov. 20, 2012) .........17, 18

*Piney Woods ER III v. Blue Cross & Blue Shield of Tex.*,
    2020 U.S. Dist. LEXIS 262853 (E.D. Tex. Oct. 2, 2020) .....................................................19

*Quality Infusion Care, Inc. v. Health Care Serv. Corp.*,
    628 F.3d 725 (5th Cir. 2010) ................................................................................................15

*REACH Air Med. Servs. LLC v. Aetna Health, Inc.*,
    No. 4:23-cv-00805 (S.D. Tex.) ..............................................................................................12

*REACH Air Med. Servs. LLC v. Cigna Health and Life Ins. Co.*,
    No. 4:23-cv-00826 (S.D. Tex.) ..............................................................................................12

*Saloojas Inc. v. Blue Shield of Cal. Life & Health Ins. Co.*,
    No. 22-cv-03267-MMC, 2022 U.S. Dist. LEXIS 180717 (N.D. Cal. Oct. 3, 2022) ..............14

*Sigmon v. Southwest Airlines Co.*,
    110 F.3d 1200 (5th Cir. 1997) ..............................................................................................13

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ...................................................................................10

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.,*
    659 S.W.3d 424 (Tex. 2023) .................................................................2, 18, 19

*Texas v. U.S.,*
    891 F.3d 553 (5th Cir. 2018) .........................................................................12

*Thole v. U.S. Bank N.A.,*
    140 S. Ct. 1615 (2020) ........................................................................ *passim*

*Touche Ross & Co. v. Redington,*
    442 U.S. 560 (1979) .......................................................................................13

*Weiner v. Blue Cross & Blue Shield of La.,*
    No. 3:17-cv-949-BN, 2018 U.S. Dist. LEXIS 139337 (N.D. Tex. Aug. 17, 2018)...........15, 17

**Statutes**

Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-
    136, § 3202(a)(2) ...........................................................................................14

9 U.S.C. § 10 .......................................................................................................5

29 U.S.C. § 1002(8) ............................................................................................9

29 U.S.C. § 1132(a) .......................................................................................2, 17

29 U.S.C. § 1132(g) ............................................................................................9

42 U.S.C. §§ 300gg-111(b)(1)(B), (b)(2)(A), (b)(7)(A), (b)(7)(C), (b)(8), (b)(9).........................6

42 U.S.C. §§ 300gg-111(c)(5)(e) .............................................................1, 6, 13

42 U.S.C. §§ 300gg-112(b)(1)(A), (b)(1)(B), (b)(5)(B), (b)(5)(D), (b)(6) ........................... *passim*

42 U.S.C. § 300gg-131 ........................................................................................5

42 U.S.C. § 300gg-132 ........................................................................................5

42 U.S.C. § 300gg-135 .................................................................................5, 12, 16

42 U.S.C. § 300gg-137 ........................................................................................6

42 U.S.C. § 300gg-139 ......................................................................................12

42 U.S.C. § 300gg-139(a), (b) ..................................................................1, 5, 13, 16

Tex. Ins. Code § 843.361 ................................................................................3

Tex. Ins. Code § 1301.060 ..............................................................................3

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................10

Fed. R. Civ. P. 12(b)(1) ............................................................................9, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................11

**Other Authorities**

*AIR AMBULANCE: Data Collection and Transparency Needed to Enhance DOT Oversight*, U.S. GOV'T ACCOUNTABILITY OFFICE, available at https://www.gao.gov/assets/690/686167.pdf (July 2017)....................................3, 4

*Featured Investments*, KOCH EQUITY DEVELOPMENT, available at https://www.kochequity.com/investments#AirMedicalHolding ........................................8

*Federal Independent Dispute Resolution Process - Status Update*, CMS, available at https://www.cms.gov/files/document/federal-idr-processstatus-update-april-2023.pdf (April 27, 2023) ..............................................................................7

George A. Nation III, *Healthcare and the Balance-Billing Problem*, 61 VILL. L. REV. 153 (2016) ...........................................................................................4

H.R. Rep. No. 116-615 ........................................................................... *passim*

*Initial Report on the Independent Dispute Resolution (IDR) Process, April 15 - September 30, 2022*, CMS, available at https://www.cms.gov/files/document/initial-report-idr-april-15-september-30-2022.pdf ...................................................................................................8

*KKR Private Equity Portfolio*, KKR, available at https://www.kkr.com/businesses/private-equity/kkr-portfolio ................................4

*Partial Report on the Independent Dispute Resolution (IDR) Process, October 1 - December 31, 2022*, CMS, available at https://www.cms.gov/files/document/partial-report-idr-process-octoberdecember-2022.pdf ..........................................................................7, 8

*Private Equity-Owned Air Ambulances Receive Higher Payments, Generate Larger and More Frequent Surprise Bills*, BROOKINGS, available at https://www.brookings.edu/articles/private-equity-owned-air-ambulances-receive-higher-payments...........................................................................................4

*Providers: Submit a Billing Complaint*, CENTERS FOR MEDICARE & MEDICAID SERVICES ("CMS"), available at https://nsa-idr.cms.gov/ providercomplaints/s/.................................................................................................................7

## SUPPORTING BRIEF

## I.    INTRODUCTION

Plaintiffs, two air ambulance providers, incorrectly contend that HCSC underpaid or did not pay thirty-three (33) Independent Dispute Resolution ("IDR") awards under the No Surprises Act ("NSA"), 42 U.S.C. § 300gg-111. *See* Plaintiffs' Complaint ("Compl.," at ECF No. 1), ¶ 1. Most of the awards at issue have already been paid or do not involve services rendered to HCSC's members. Even so, the Court may dispose of Plaintiffs' Complaint in its entirety because Plaintiffs lack standing and fail to state a claim for relief.

*First*, **Plaintiffs fail to state a claim under the NSA's "Timing of Payment" provision, 42 U.S.C. § 300gg-112(b)(6), because it is not privately enforceable (Count One)**. Statutes provide a private cause of action only if Congress shows the intent to create a private right and a private remedy to the plaintiff through "clear and unambiguous terms." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). That is not the case here. Congress passed the NSA to protect consumers from surprise bills from air ambulance providers like Plaintiffs, not to create a new right and remedy for Plaintiffs. 42 U.S.C. § 300gg-135; *see* H.R. Rep. No. 116-615, at 47 (2020). Congress also vested federal agencies with extensive oversight and authority over the IDR process, including to act on complaints that health plans are not paying IDR awards. And while the NSA expressly limits judicial review of IDR awards to the four grounds for vacatur under the Federal Arbitration Act, 42 U.S.C. § 300gg-111(c)(5)(E)(II), and directs providers to refund patients "plus interest" if they overbill the patient, 42 U.S.C. § 300gg-139, the Act does not contemplate any judicial review or remedy for enforcing IDR awards. "This silence on the remedy question serves to confirm that in enacting the Act, Congress was concerned not with private rights" for Plaintiffs, but with protecting patients from Plaintiffs' surprise bills. *Cal. v. Sierra Club*, 451 U.S. 287, 296 (1981).

**Second**, **Plaintiffs lack standing and fail to state a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (Count Two)**. Plaintiffs are not participants or beneficiaries that can seek benefits from HCSC under ERISA. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs claim to have assignments of benefits so that they may "step into the shoes of" HCSC's member-beneficiaries, *see* Compl., ¶ 19, but HCSC's members "have no concrete stake in this dispute and therefore lack Article III standing." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Specifically, HCSC's members (1) do not participate in the IDR process, (2) are not entitled to receive any payments from awards issued through the IDR process, and (3) are not liable for any amounts owed by the plan when the plan fails to timely pay an award. 42 U.S.C. §§ 300gg-112(b)(1)(A), (b)(5)(B), (b)(6), 300gg-135. Neither Plaintiffs nor the HCSC member-beneficiaries who supposedly assigned their benefits to Plaintiffs have standing to sue HCSC under ERISA. Plaintiffs also fail to state an ERISA claim because they have not (and cannot) identify any plan terms that compel HCSC to pay Plaintiffs' alleged IDR awards.

**Third**, **Plaintiffs fail to state a claim for unjust enrichment because Plaintiffs did not provide services for HCSC's benefit (Count Three)**. Instead, Plaintiffs provided services for HCSC's member-beneficiaries and sought payment from HCSC. "Recovery in quantum meruit [or unjust enrichment] cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to *or* for the benefit of the insurer." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 437-38 (Tex. 2023) (quoting *Angelina Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 432 (N.D. Tex. 2020) (collecting cases)).

For these reasons and those more fully stated below, the Court should dismiss Plaintiffs' Complaint with prejudice.

## II.     BACKGROUND

### A.     <u>The Problem of Surprise Medical Bills</u>

Before 2022, out-of-network health care providers widely engaged in "balance billing" by billing patients the difference between what the provider arbitrarily charges for the service and what the patient's health plan covers. *See* H.R. Rep. No. 116-615, at 51.[1] While patients sometimes seek treatment from out-of-network providers, they frequently have "little or no control over whether a provider is in- or out-of-network," such as "in emergency settings" when they "are transported by an out-of-network ambulance." *Id.* In such cases, patients receive "surprise medical bills" and "are subject to higher-than-expected out-of-pocket costs." *Id.* The financial liability from surprise medical bills "can be staggering," *id.* at 52, and air ambulance bills may have been the worst culprit.

The price of air ambulance services is exorbitant, driven by a lack of competition in the industry and patients' inability to shop for alternative providers when facing medical emergencies. *See AIR AMBULANCE: Data Collection and Transparency Needed to Enhance DOT Oversight*, U.S. GOV'T ACCOUNTABILITY OFFICE, available at https://www.gao.gov/assets/690/686167.pdf, at pp. 11, 18-19 (July 2017); *see also* H.R. Rep. No. 116-615, at 53 (certain provider specialties "hold substantial market power" and "face highly inelastic demands for their services because patients lack the ability to meaningfully choose or refuse care," enabling the providers "to charge amounts for their services that . . . result[ ] in compensation far above what is needed to sustain their practice.").

Around the time the NSA was drafted, nearly 70% of air ambulance providers were out-of-network. H.R. Rep. No. 116-615, at 52–53. Most air ambulance providers remained out-of-

---

[1] In-network providers agree to accept pre-negotiated rates as payment in full for their services and are generally prohibited from balance billing. *E.g.*, Tex. Ins. Code §§ 843.361, 1301.060.

network — and therefore issued surprised medical bills to patients — because it was more financially advantageous to balance bill patients the provider's charges rather than accept pre-negotiated rates with health plans. *See AIR AMBULANCE*, *supra*, at p. 18 ("[B]eing out of network with insurance is advantageous to the [air ambulance] provider because a patient receiving a balance bill will ask for a higher payment from the insurance company, which often results in higher payment to the air ambulance provider than having a pre-negotiated payment rate with the insurer.").

While air ambulance providers reaped massive profits from this system, their practices were having "devastating financial impacts on Americans and their ability to afford needed health care." H.R. Rep. No. 116-615, at 52; *see* George A. Nation III, *Healthcare and the Balance-Billing Problem,* 61 VILL. L. REV. 153, 160 (2016) ("What makes the problem of balance billing so pernicious is that the bills not only surprise patients, but the total cost of the bills is often financially devastating."). "The high share of claims resulting in potential balance bills combined with elevated charges . . . [left] many air ambulance patients at risk of receiving an enormous medical bill after their transport." *Private Equity-Owned Air Ambulances Receive Higher Payments, Generate Larger and More Frequent Surprise Bills*, BROOKINGS, available at https://www.brookings.edu/articles/private-equity-owned-air-ambulances-receive-higher-payments/.[2] Air ambulance patients were "frequently at risk of surprise out-of-network bills averaging nearly $20,000." *Id.*

---

[2] Plaintiffs are funded by private equity. S*ee KKR Private Equity Portfolio*, KKR, available at https://www.kkr.com/businesses/private-equity/kkr-portfolio.

**B.**     **The NSA Eliminates Patient Liability for Surprise Medical Bills and Creates a Framework for Surprise Billing Providers and Health Plans to Resolve Payment Disputes.**

"[T]o protect consumers from surprise medical bills," Congress enacted the NSA. H.R. Rep. No. 116-615, at 47. The Act prohibits emergency providers, air ambulance providers, and out-of-network providers who provide care at in-network facilities from balance billing or otherwise holding patients liable for anything beyond the patient's in-network cost sharing (*e.g.*, deductible, copayment, or coinsurance). *See* 42 U.S.C. §§ 300gg-131, 300gg-132, 300gg-135. If a provider bills a patient-enrollee for more than the patient's in-network cost sharing, then "the provider shall reimburse the enrollee for the full amount paid by the enrollee in excess of the in-network cost-sharing amount for the treatment or services involved, plus interest, at an interest rate determined by the Secretary." 42 U.S.C. § 300gg-139(b). In addition, providers must submit provider directory information to health plans so that health plans can effectively inform patients whether the provider is in network or out of network. 42 U.S.C. § 300gg-139(a).

As is relevant to this case, the NSA also sets up a separate framework — including the creation of an IDR process — for resolving disputes over surprise medical bills between providers and health plans. *See* 42 U.S.C. §§ 300gg-111, 300gg-112; *see also* H.R. Rep. No. 116-615, at 56–58. Surprise billing providers who are dissatisfied with the payment they receive from a health plan may initiate open negotiations with the plan and attempt to negotiate an agreed-upon payment rate for the relevant services. *See* 42 U.S.C. § 300gg-112(b)(1)(A). If open negotiations fail, then the provider (or health plan) may initiate the IDR process within four days after the open negotiation period is exhausted. 42 U.S.C. § 300gg-112(b)(1)(B). Under the IDR process, the parties select, or the Department of Health and Human Services ("HHS") appoints, a "certified IDR entity" to determine whether the dispute is eligible and make a payment determination. *See* 42 U.S.C. § 300gg-112(b)(4), (b)(5).

The IDR process uses a "baseball-style" arbitration where the provider and the health plan each submit an offer, and the certified IDR entity selects one party's offer as the out-of-network payment rate. *Id.* In the absence of (1) a fraudulent claim or evidence of a misrepresentation of facts presented to the IDR entity or (2) judicial review under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), the award is binding, and payment "shall be made . . . not later than 30 days after the date on which such determination is made." 42 U.S.C. §§ 300gg-112(b)(5)(D) (incorporating 42 U.S.C. § 300gg-111(c)(5)(E)), (b)(6). Providers may not submit a new dispute involving the same parties and the same type(s) or services within the 90-day period following the IDR entity's determination. 42 U.S.C. § 300gg-111(c)(5)(E)(ii). Importantly, the patient is not involved in or liable for any consequence of this IDR process. *See* 42 U.S.C. §§ 300gg-111, 300gg-112; *see also* H.R. Rep. No. 116-615, at 56-58.[3]

Congress vested HHS with extensive rulemaking authority and oversight over the IDR process. *E.g.*, 42 U.S.C. §§ 300gg-111(a)(2) (creating annual audit and rulemaking process for qualifying payment amounts), (c)(1)(B) (directing parties to notify HHS when initiating the IDR process), (c)(2)(A) (directing HHS to establish the IDR process for air ambulance providers), (c)(3) (directing HHS to specify criteria for batching items and services), (c)(4) (directing HHS to establish a process for certifying IDR entities, oversee the certification and decertification of such entities, and manage the selection of certified IDR entities in disputes), (c)(7) (directing HHS to publicize certain information regarding the IDR process), (c)(8) (directing HHS to establish and collect an administrative fee for managing the IDR process), (c)(9) (providing that HHS "may modify any deadline or other timing requirement specified under this subsection . . . in cases of

---

[3] The NSA also creates a separate patient-provider dispute resolution process if the patient is uninsured, but that is not relevant to this dispute. *See* 42 U.S.C. § 300gg-137.

extenuating circumstances, as specified by the Secretary . . .”); *accord* 42 U.S.C. §§ 300gg-111(b)(1)(B), (b)(2)(A), (b)(7)(A), (b)(7)(C), (b)(8), (b)(9). HHS also uses an online portal through which providers may submit complaints and has the authority to perform complaint-based audits to enforce the NSA’s provisions. *See Providers: Submit a Billing Complaint*, CENTERS FOR MEDICARE & MEDICAID SERVICES (“CMS”), available at https://nsa-idr.cms.gov/providercomplaints/s/ (accepting complaints if the provider “believe[s] an entity is not complying with the Federal Independent Dispute Resolution process” or if the provider “want[s] to report of violation of the protections of the No Surprises Act”).

The IDR process has had its challenges. In less than a year, initiating parties — 99% of which are providers — have overwhelmed the system, initiating nearly 335,000 disputes through the federal IDR portal. *Federal Independent Dispute Resolution Process – Status Update*, CMS, available at https://www.cms.gov/files/document/federal-idr-processstatus-update-april-2023.pdf (April 27, 2023); *see Partial Report on the Independent Dispute Resolution (IDR) Process, October 1 – December 31, 2022*, CMS, available at https://www.cms.gov/files/document/partial-report-idr-process-octoberdecember-2022.pdf, at pp. 16-17. That is more than fourteen times the volume that HHS anticipated. *See Federal Independent Dispute Resolution Process – Status Update* (April 27, 2023), *supra*. Nearly 40% of the disputes that have been closed were ineligible for the federal IDR process. *See id.*

## C.    **The Parties**

HCSC, an Illinois Mutual Legal Reserve Company, issues and administers Blue Cross and Blue Shield (“BCBS”) health insurance and health benefit plans in five states through its unincorporated divisions: Blue Cross and Blue Shield of Illinois (“BCBSIL”), Blue Cross and Blue Shield of Montana (“BCBSMT”), Blue Cross and Blue Shield of New Mexico (“BCBSNM”), Blue

Cross and Blue Shield of Oklahoma ("BCBSOK"), and Blue Cross and Blue Shield of Texas ("BCBSTX"). *See* Compl., ¶ 1.[4]

Plaintiffs are affiliates of Global Medical Response, Inc. ("GMR"), "the largest independent provider of air and ground ambulatory services in the United States." *See* Compl., ¶¶ 2-3; *id.*, p. 10; *Featured Investments*, KOCH EQUITY DEVELOPMENT, available at https://www.kochequity.com/investments#AirMedicalHoldings. GMR has initiated approximately 40% of all air ambulance provider disputes, by far the most of any air ambulance provider and more than double the number of disputes initiated by the next closest provider. *See Partial Report on the Independent Dispute Resolution (IDR) Process, October 1 – December 31, 2022*, *supra*, at pp. 25-26; *accord Initial Report on the Independent Dispute Resolution (IDR) Process, April 15 – September 30, 2022*, CMS, available at https://www.cms.gov/files/document/initial-report-idr-april-15-september-30-2022.pdf, at pp. 25–26. Plaintiffs have network contracts that govern payment and other terms for services rendered to BCBSTX and BCBSOK members, but they have no contract and are "out-of-network" with BCBSIL, BCBSMT, and BCBSNM. *See* Compl., ¶ 1.

---

[4] In addition to issuing and administering BCBSIL, BCBSMT, BCBSNM, BCBSOK, and BCBSTX health plans, HCSC, through its unincorporated divisions, serves as a "host plan" for out-of-state BCBS plans under the "BlueCard" program. *See Highmark, Inc. v. U.S.*, 161 Fed. Cl. 240, 243 (2022). The BlueCard program enables members of a BCBS health plan to obtain health care services while traveling or living in another BCBS plan's service area. *See id.* When acting as a "host plan," BCBSIL, BCBSMT, BCBSNM, BCBSOK, and BCBSTX will receive claims and communicate with providers in their respective states, but the "home plan" (*i.e.*, the out-of-state BCBS plan that insures or administers the patient's health plan) is ultimately responsible for adjudicating and paying the claim. *See id.* Most of the awards in dispute involve services rendered to patients with out-of-state BCBS health plans; HCSC's unincorporated division merely served as the host plan and did not insure or administer coverage for the patient.

### D.    Plaintiffs' Complaint

Plaintiffs' Complaint alleges that HCSC has not timely paid thirty-three (33) IDR determinations within 30 days after the determinations were issued. *See* Compl., ¶¶ 1, 10, 16; *see also id.*, p. 10. Plaintiffs' Complaint asserts three causes of action:

**Count One — Action for Nonpayment of IDR Determinations (42 U.S.C. § 300gg-112(b)(6)).** Plaintiffs allege that decisions from certified IDR entities are "binding" and "that payment 'shall be made directly to the nonparticipating provider not later than 30 days after the date on which such determination is made.'" Compl., ¶ 16 (quoting 42 U.S.C. § 300gg-112(b)(6)). Plaintiffs contend that HCSC has not followed — and Plaintiffs are entitled to enforce and seek relief under — this "Timing of Payment" provision in the NSA, including an award of "pre-judgment interest from the 31st day after each award was entered until the date judgment is entered and post-judgment interest thereafter until the judgment is satisfied." *See id.*, ¶¶ 16–17.

**Count Two – Improper Denial of Benefits (ERISA Section 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)).** Plaintiffs claim that they "have been assigned the right to payment and benefits from HCSC's beneficiaries" and therefore "step into the shoes of, and are now considered, ERISA beneficiaries pursuant to 29 U.S.C. § 1002(8) for any self-funded plans HCSC is administering." Compl., ¶ 19. Plaintiffs further assert that HCSC has the "responsibility to administer" the IDR process "for plan beneficiaries in connection with administering their benefit plans." *Id.*, ¶ 20. Plaintiffs conclude, "Thus, when HCSC violates the NSA through its nonpayment of IDR awards for air ambulance transports, it breaches its obligations to the self-funded plans it administers and to the plan beneficiaries." *Id.* Plaintiffs ask the Court "to obtain their plan benefits [as assignees] by compelling HCSC to use plan funds to pay Plaintiffs the IDR awards" and grant Plaintiffs "reasonable attorney's fees and costs" under 29 U.S.C. § 1132(g). *Id.*, ¶ 23.

**Count Three – Unjust Enrichment**. Plaintiffs assert that "HCSC received the benefit of air ambulance transports for its beneficiaries during times of emergent medical needs," and the "transports were provided at Plaintiffs' expense and under circumstances that would make it unjust for HCSC to retain the benefit without commensurate compensation." Compl., ¶ 25.

## III.    STANDARD OF REVIEW

### A.    <u>Rule 12(b)(1)</u>

Under Rule 12(b)(1), movants may seek dismissal of an action due to lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts have limited jurisdiction, possessing only power authorized by the federal Constitution and statutes. *Griffith v. Alcon Research, Ltd.*, 712 F. App'x 406, 408 (5th Cir. 2017) (citing *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014)). "Thus, a federal court presumes that a cause of action 'lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Id.* (quoting *Energy Mgmt. Servs.*, 739 F.3d at 257).

Whether a plaintiff has standing to bring an action implicates the Court's subject-matter jurisdiction. *E.g.*, *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020) ("As a matter of subject matter jurisdiction, standing under ERISA § 502(a) is subject to challenge through Rule 12(b)(1)." (citation and internal quotations omitted) (collecting cases).) "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole*, 140 S. Ct. at 1618. At the pleadings stage, the plaintiff must "plausibly and clearly allege" facts demonstrating standing. *Id.* at 1620-21 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

### B.     Rule 12(b)(6)

Rule 12(b)(6) permits movants to seek dismissal due to a plaintiff's failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a valid claim for relief, a complaint "must contain sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (internal quotations omitted)). A complaint that merely alleges a "possible" or "conceivable" claim for relief is insufficient. *Iqbal*, 556 U.S. at 679-80 (quoting *Twombly*, 550 U.S. at 570) (quotations omitted)). Instead, a plaintiff must allege sufficient factual matter that ***shows*** he or she is entitled to relief.  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Firefighters' Ret. Sys.*, 894 F.3d at 669 (citation and internal quotations omitted).

## IV.    ARGUMENT

### A.     Plaintiffs Fail to State a Claim for Relief under the NSA Because the Act Is Not Privately Enforceable (Count One).

The NSA does not provide a private cause of action for Plaintiffs to sue HCSC in federal court to "have the IDR determinations converted into a federal judgment and the assistance of this Court in post-judgment collection efforts" and recover "pre-judgment interest from the 31st day after each award was entered" plus "post-judgment interest." *See* Compl., ¶¶ 16–17.

When evaluating whether a statute creates a private cause of action, the key inquiry is whether Congress intended to create both a private right and a private remedy to the plaintiff:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (citations and internal quotations omitted); *accord Cantu v. Moody*, 933 F.3d 414, 424 (5th Cir. 2019) (quoting *Sandoval*); *Texas v. U.S.*, 891 F.3d 553, 560 n.33 (5th Cir. 2018) (same).

Plaintiffs allege that the "Timing of Payment" provision in the NSA authorizes their lawsuit against HCSC to convert IDR awards into a federal judgment and award pre- and post-judgment interest. *See* Compl., ¶¶ 16–17 (citing 42 U.S.C. § 300gg-112(b)(6)). Nothing in this provision expressly states that air ambulance providers like Plaintiffs have a private cause of action against health plans like HCSC to convert IDR awards into federal judgments and seek pre- and post-judgment interest. *See* 42 U.S.C. § 300gg-112(b)(6).[5] Consequently, Plaintiffs must show that Congress, through "clear and unambiguous terms," nevertheless intended to create a new private right and remedy for Plaintiffs by implication, despite the lack of express language. *Delancey v. City of Austin*, 570 F.3d 590, 593 (5th Cir. 2009) (quoting *Gonzaga Univ.*, 536 U.S. at 290 (internal quotations omitted)). Plaintiffs face a "heavy burden" to "overcome the familiar presumption that Congress did not intend to create a private cause of action." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521–22 (5th Cir. 2002). They cannot meet their burden here.

There are no "clear and unambiguous terms" in the NSA demonstrating congressional intent to grant Plaintiffs a new private right and remedy. Congress passed the NSA to protect patients from air ambulance providers like Plaintiffs. *See* 42 U.S.C. §§ 300gg-135 (banning air ambulance providers like Plaintiffs from billing or holding patients liable for any amount beyond

---

[5] Plaintiffs have acknowledged that the NSA does not expressly provide them with a private cause of action in similar cases. *See REACH Air Med. Servs. LLC v. Aetna Health, Inc.*, No. 4:23-cv-00805 (S.D. Tex.), at ECF No. 13, pp. 7-11 (arguing only that the NSA implies that they have a private cause of action); *REACH Air Med. Servs. LLC v. Cigna Health and Life Ins. Co.*, No. 4:23-cv-00826 (S.D. Tex.), at ECF No. 29, pp. 11-14 (same).

the patient's in-network cost sharing), 300gg-139 (providers who overbill patients beyond their in-network cost "shall reimburse" the patient "plus interest"); *see also* H.R. Rep. No. 116-615, at 47; *supra*, pp. 2–7.

Congress also vested HHS and other agencies with extensive rulemaking authority and regulatory oversight over the IDR process; HHS accepts provider complaints — including complaints that health plans are not timely paying IDR awards — and performs complaint-based audits to enforce the NSA's provisions. *See supra*, p. 6; *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1206 (5th Cir. 1997) ("We have held that the 'existence of [an] administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive.'") (citation and internal quotations omitted).

While the NSA expressly limits judicial review of IDR awards to the four grounds for vacatur under the Federal Arbitration Act, the "Timing of Payment" provision on which Plaintiffs rely does not contemplate any type of judicial review or remedy for enforcing IDR awards. *Compare* 42 U.S.C. § 300gg-111(c)(5)(E)(II) *with* 42 U.S.C. § 300gg-112(b)(6); *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 571-72 (1979) ("Obviously, then, when Congress wished to provide a" mechanism for judicial review, "it knew how to do so and did so expressly."). And although Congress directs ***providers*** to pay ***patients*** interest if the provider overbilled the patient, nothing in the NSA suggests that health plans must pay providers interest on IDR awards. *Compare* 42 U.S.C. § 300gg-139(b) *with* 42 U.S.C. § 300gg-112(b)(6); *see Sierra Club*, 451 U.S. at 296 ("This silence on the remedy question serves to confirm that in enacting the Act, Congress was concerned not with private rights" for Plaintiffs, but with protecting patients from surprise bills from Plaintiffs). In sum, nothing in the NSA shows that Congress intended to create a new private right and remedy for Plaintiffs, much less through "clear and unambiguous terms." *Delancey*, 570

13

F.3d at 593 (quoting *Gonzaga Univ.*, 536 U.S. at 290 (internal quotations omitted)).

Indeed, the "Timing of Payment" provision in the NSA that Plaintiffs claim grants them a private right of action is similar to a payment provision in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, that courts almost universally found did ***not*** create a private cause of action for health care providers. Specifically, the CARES Act provided that during the COVID-19 public health emergency, health plans that do not have a negotiated rate with a diagnostic testing provider "shall reimburse the provider in an amount that equals the cash price for such services as listed by the provider on a public internet website . . ." CARES Act, § 3202(a)(2); *compare with* 42 U.S.C. § 300gg-112(b)(6) (health plan payments for IDR awards "shall be made directly to the non-participating provider not later than 30 days after the date on which such determination is made"). Nearly all courts that examined the CARES Act payment provision found that it did not create a private cause of action for health care providers. *See, e.g.*, *Genesis Lab. Mgmt. LLC v. United Health Grp., Inc.*, No. 21-cv-12057, 2023 U.S. Dist. LEXIS 38156, at *9 (D.N.J. Mar. 6, 2023) ("[E]ven if Congress intended to create a personal right of reimbursement for providers, like Plaintiff, through the FFCRA and the CARES Act, there is nothing in the text or structure of those acts suggesting that Congress intended to afford a privately enforceable remedy to Plaintiff."); *Saloojas Inc. v. Blue Shield of Cal. Life & Health Ins. Co.*, No. 22-cv-03267-MMC, 2022 U.S. Dist. LEXIS 180717, at *2 (N.D. Cal. Oct. 3, 2022) ("[T]he overwhelming majority of district courts to have addressed the issue" found that § 3202 of the CARES Act does not create a private right of action) (collecting cases); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400, 2022 U.S. Dist. LEXIS 169307, at *27-28 (D. Minn. Sept. 20, 2022) (noting that "[t]he Court is mindful of the Supreme Court's disfavor of implied rights of action" in finding no implied cause of action under § 3202); *Murphy Med. Assocs., LLC v. Cigna Health*

14

*& Life Ins. Co.*, No. 3:20-cv-1675 (JBA), 2022 U.S. Dist. LEXIS 43351, at *13-14 (D. Conn. Mar. 11, 2022) (acknowledging the plaintiff's argument that it will be "left remediless without a private right of action" "may provide a good policy reason to create a private right of action, [but] it does not provide an indication that Congress intended to create such a right.") (citing *Sandoval*, 532 U.S. at 286–87). This Court should reach the same result here.

**B.**     <u>Plaintiffs Lack Standing and Fail to State an ERISA Claim (Count Two).</u>

    **1.**     **Plaintiffs Lack Standing to Bring ERISA Claims on Behalf of Patients, Who Have Not Sustained any Injury.**

Neither Plaintiffs nor the patients who supposedly assigned their benefits to Plaintiffs have standing to compel the payment of IDR awards as benefits under ERISA.

"[A] health care provider has no independent right of standing to seek redress under ERISA . . ." *Weiner v. Blue Cross & Blue Shield of La.*, No. 3:17-cv-949-BN, 2018 U.S. Dist. LEXIS 139337, at *9-10 (N.D. Tex. Aug. 17, 2018); *see also* 29 U.S.C. § 1132(a)(1)(B) (permitting only "a participant or beneficiary" to bring an action for plan benefits).

Accepting this legal principle, Plaintiffs instead allege that they "have been assigned the right to payment and benefits from HCSC's beneficiaries." Compl., ¶ 19. "[A]n assignee takes all of the rights of the assignor, no greater and no less," and "stands in the same position as its assignor stood." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) (citations and internal quotations omitted); *accord* Compl., ¶ 19 ("Plaintiffs step into the shoes of . . . ERISA beneficiaries . . ."); *Foley v. Southwest Tex. HMO, Inc.*, 193 F. Supp. 2d 903, 906-07 (E.D. Tex. 2001) ("[A]n assignee is limited to the same remedies under ERISA as the plan participants or beneficiaries who originally assigned her rights under the plan to the assignee.").

Consequently, Plaintiffs must demonstrate that the HCSC member-beneficiaries who supposedly assigned their right to benefits to Plaintiffs have standing to sue and "compel[ ] HCSC to use plan funds to pay Plaintiffs the IDR awards." Compl., ¶ 23. They cannot.

For example, in a recent Supreme Court decision, two plan participants filed suit under ERISA for the alleged mismanagement of their defined-benefit plan. *Thole*, 140 S. Ct. at 1618-19. As defined-benefit plan participants, the plaintiffs "receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id.* at 1618. That is, the plaintiffs "have received all of their monthly pension benefits so far, and they will receive those same monthly payments for the rest of their lives." *Id.* at 1619. Noting that "[t]here is no ERISA exception to Article III," the Supreme Court held that "[t]he plaintiffs have no concrete stake in this dispute and therefore lack Article III standing." *Id.* at 1622.

The same is true here. Beneficiaries may bring a Section 502(a)(1)(B) claim only if they have an "immediate," "unconditional," and "legally cognizable property interest" in "'benefits due . . . under the terms of [the] plan.'" *See Downs v. Libert Life Assur. Co.*, No. 3:05-cv-0791-R, 2005 U.S. Dist. LEXIS 22531, at *23-24 (N.D. Tex. Oct. 5, 2005) (citing, among other things, 29 U.S.C. § 1132(a)(1)(B)). However, the NSA's newly created IDR process is strictly for **health plans and providers** to resolve disputes over certain categories of out-of- network payments. *See* 42 U.S.C. § 300gg-112. **Member-beneficiaries** have no interest whatsoever in those disputes. They do not participate in open negotiations or the IDR process. *See, e.g.*, 42 U.S.C. §§ 300gg-112(b)(1)(A) ("open negotiations" are "between *[the] provider and plan*"), (b)(5)(B) ("***the provider and the group health plan or health insurance issuer***" submit offers to the IDR entity) (emphasis added). They are not entitled to receive any payments from awards issued through the IDR process. 42

16

U.S.C. § 300gg-112(b)(6) (payments based on determinations from the open negotiation or the IDR process "***shall be made directly to the nonparticipating provider***") (emphasis added). And they are not liable for any amounts owed by the plan when the plan fails to timely pay an award. 42 U.S.C. § 300gg-135 (non-participating air ambulance providers "***shall not bill, and shall not hold liable,*** [the] participant, beneficiary, or enrollee for a payment amount for such service furnished by such provider" beyond the patient's cost-sharing for the service) (emphasis added); *see also* 42 U.S.C. § 300gg-139(b). In other words, the HCSC member-beneficiaries on whose behalf Plaintiffs are supposedly proceeding "have no concrete stake in this dispute and therefore lack Article III standing." *Thole*, 140 S. Ct. at 1622.

Because neither Plaintiffs nor the member-beneficiaries who purportedly assigned their benefits to Plaintiffs have standing to sue HCSC for the payment of IDR awards under ERISA, Count Two of Plaintiffs' Complaint must be dismissed with prejudice. 29 U.S.C. § 1132(a)(1)(B); *Thole*, 140 S. Ct. at 1622; *Weiner*, 2018 U.S. Dist. LEXIS 139337, at *9–10; Compl., ¶¶ 19-23.

### 2. Plaintiffs Also Fail to State a Claim for ERISA Benefits Because No Plan Terms Compel HCSC to Pay Plaintiffs IDR Awards.

Independently, Plaintiffs also fail to state a claim under Section 502(a)(1)(B) of ERISA. To state such a claim, this Court explains:

> [B]enefits payable under an ERISA plan are limited to the benefits specified in the plan. A plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question. The plaintiff must provide the court with enough factual information to determine whether the [services] were indeed covered services under the plan. Without information as to the terms and provisions of the plan documents, the complaint fails to state a claim upon which relief may be granted

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-cv-02205-D, 2012 U.S. Dist. LEXIS 165791, at *6-7 (N.D. Tex. Nov. 20, 2012) (citations and internal quotations omitted) (granting dismissal because the "amended complaint lacks the specificity necessary to state a

facially plausible claim under § 1132(a)(1)(B)," *id*., at *8); *accord Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, No. 5:17-cv-1016-DAE, 2018 U.S. Dist. LEXIS 151338, at *14-17 (W.D. Tex. Apr. 20, 2018).

Plaintiffs fail to meet this standard. They generally allege that "[o]pen negotiations, the IDR process, including submitting position statements, and paying IDR awards from plan funds is what HCSC has agreed to do for plan beneficiaries in connection with administering their benefit plans," and "HCSC improperly denied plan benefits by failing to pay IDR awards within thirty (30) days of each decision as required by federal law." Compl., ¶¶ 20-21. But Plaintiffs do not (and cannot) identify any plan language under which HCSC agreed to participate in open negotiations, submit position statements in the IDR process, and pay IDR awards from plan funds within thirty (30) days of each decision. *See id.* Indeed, these responsibilities arise from **the NSA**, not any ERISA plan terms. 42 U.S.C. § 300gg-112; *see also* Compl., ¶ 21 (HCSC's responsibility to pay IDR awards is "***required by federal law***") (emphasis added).

Because Plaintiffs cannot "identify a specific plan term that confers" on HCSC member-beneficiaries the right to "compel[ ] HCSC to use plan funds to pay Plaintiffs the IDR awards" at issue in the Complaint, Count Two should be dismissed. *Paragon Office Servs.*, 2012 U.S. Dist. LEXIS 165791, at *6-7; Compl., ¶ 23.

### C.    <u>Plaintiffs Fail to State a Claim for Relief for Unjust Enrichment Because Plaintiffs Did Not Provide Services for HCSC's Benefit (Count Three).</u>

Plaintiffs' final cause of action for unjust enrichment fails as a matter of law because Plaintiffs did not render any services for HCSC's benefit. To state a claim for unjust enrichment, a plaintiff must show that (1) it rendered valuable services (2) "for the defendant," (3) the defendant accepted the services, and (4) the defendant had reasonable notice that the plaintiff was expecting to be paid. *Tex. Med. Res.*, 659 S.W.3d at 436 (citation omitted). To meet the second

element, "[i]t is not enough to show that [the plaintiff's] efforts benefitted [the defendant]. Rather, the plaintiff's efforts must have been undertaken '*for* the person sought to be charged.'" *Id.,* at 437 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (adding, "It is well settled that '[n]o one can legally claim compensation for . . . incidental benefits and advantages to one, flowing to him on account of services rendered to another . . .'") (citation omitted)). Plaintiffs cannot do so here.

To support their unjust enrichment claim, Plaintiffs allege that "HCSC received the benefit of air ambulance transports ***for its beneficiaries*** during times of emergent medical needs," and "[t]hese transports were provided at Plaintiffs' expense and under circumstances that would make it unjust for HCSC to retain the benefit without commensurate compensation." Compl., ¶ 25 (emphasis added). But as this Court and the Texas Supreme Court reaffirmed when dismissing unjust enrichment claims brought by emergency health care providers against health plans, Plaintiffs' provision of services to ***HCSC's members*** (or, even more attenuated, members of other non-HCSC BCBS health plans, *see* n. 3) cannot support an unjust enrichment claim against HCSC:

> Serving a defendant's *customers* is hardly the same as serving the defendant *itself* . . . Recovery in quantum meruit cannot be had from an insurer based on services rendered to an insured, because those services aren't direct to *or* for the benefit of the insurer. As our sister district courts have repeatedly pointed out, "a ripened obligation to pay money to the insured [or to Plaintiffs on behalf of the insured] . . . hardly can be called a benefit."

*Tex. Med. Res.*, 659 S.W.3d at 437 (quoting *Angelina Med. Assocs. PA*, 506 F. Supp. 3d at 432 (collecting cases)) (emphasis in original);[6] *accord, e.g.*, *Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:20-cv-41, 2020 U.S. Dist. LEXIS 262853, at *33-34 (E.D. Tex. Oct. 2,

---

[6] The plaintiffs' precise causes of action in *Tex. Med. Res.* and *Angelina* was quantum meruit, but "[q]uantum meruit is a [state-law] equitable theory 'founded in unjust enrichment.'" *Tex. Med. Res.*, 659 S.W.3d at 436 (citation omitted); *accord Angelina Emergency Med. Assocs. PC*, 506 F. Supp. 3d at 431 (citation omitted).

19

2020) ("Texas courts have repeatedly held that no benefit is conferred upon an insurer through the relationship between a health care provider and its insured in the context of quantum meruit and unjust enrichment claims.") (collecting cases); *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:10-cv-2652-L, 2015 U.S. Dist. LEXIS 12729, at *36 (N.D. Tex. Sept. 23, 2015) ("[T]he court concludes that any possible benefit conferred on BCBSTX [is] too attenuated and indirect to support Plaintiffs' quantum meruit claim."); *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Even if [the health plan] received some benefit as a result of [the provider] providing medical services to its insureds . . . [the provider's] services were rendered to and for its patients, not [the health plan].").

Plaintiffs have not and cannot state a claim for unjust enrichment against HCSC. *See id.* Count Three should be dismissed with prejudice.

## V.      CONCLUSION

For the reasons set forth more fully above, HCSC respectfully requests the Court enter an order dismissing this action with prejudice, and award such other and further relief as the Court deems just and proper.

DATED: October 3, 2023                Respectfully Submitted,


                                      */s/ Martin J. Bishop*
                                      Martin J. Bishop
                                      Texas Bar No. 24086915
                                      **Reed Smith LLP**
                                      2850 N Harwood Street, Suite 1500
                                      Dallas, Texas 75201
                                      Telephone: (469) 680-4200
                                      mbishop@reedsmith.com

                                      Jason T. Mayer (admitted *pro hac vice*)
                                      **Reed Smith LLP**
                                      10 South Wacker Drive, Suite 4000
                                      Chicago, IL 60606-7507

Telephone: (312) 207-1000
jmayer@reedsmith.com

**ATTORNEYS FOR**
**HEALTH CARE SERVICE CORPORATION**

### CERTIFICATE OF SERVICE

The undersigned certifies that on October 3, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Martin J. Bishop*