UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GUARDIAN FLIGHT LLC and MED-TRANS CORPORATION, | § § § § § | |
| Plaintiffs, | | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-1861-B |
| HEALTH CARE SERVICE CORPORATION, | § § § § § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Health Care Service Corporation ("HCSC")'s Motion to Dismiss (Doc. 11). For the following reasons, the Court **GRANTS** HCSC's Motion and **DISMISSES** Plaintiffs Guardian Flight LLC and Med-Trans Corporation (collectively, "Plaintiffs")'s claims. A final judgment will follow.

### I.

### BACKGROUND[1]

This case is about air ambulances. Air ambulances serve the important role of transporting people experiencing severe health crises to hospitals that provide emergency care. Doc. 1, Compl., ¶ 7. Until recently, most air ambulance providers were out-of-network health care providers, meaning that they had no affiliation with any health insurance company, and had not negotiated

---

[1] The Court derives the factual background from Plaintiffs' Complaint and the Congressional Record of the No Surprises Act. "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (citation omitted). The Court takes judicial notice of the Congressional Record in support of the No Surprises Act. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959).

the prices for their services with health insurance companies. *See* H.R. REP. No. 116-615(I), at 52 (2020). This meant that air ambulance providers could charge one price for their services, while health insurance companies would only cover a different (i.e., lower) price. *Id.* at 51–52. This, in turn, led to "balance billing," meaning that patients were responsible for the difference between the provider's price and the amount covered by the health insurers. *See id.* at 48. For example, if an out-of-network provider charged $30,000, but a patient's health plan covered only $5,000, the patient typically owed the out-of-network provider $25,000.

These circumstances led to enactment of the No Surprises Act ("NSA") in 2022. *See id.* at 47–49. The NSA protects patients from the severe financial liabilities that could result from surprise medical bills and balance billing. *Id.* at 51. As relevant here, the NSA establishes a dispute resolution system for when healthcare providers and insurers dispute surprise medical bills. 42 U.S.C. § 300gg-111(c)(1)–(5). This system is known as the Independent Dispute Resolution ("IDR") process, and it works as follows: First, the provider and the insurer negotiate the price for the service. *Id.* § 300gg-111(c)(1)(A). Second, if these negotiations fail, the provider and insurer have four days to begin the IDR process. *Id.* § 300gg-111(c)(1)(B). Third, a certified IDR entity is selected by either the parties or the Department of Health and Human Services ("HHS"). *Id.* § 300gg-111(c)(4). Fourth, the certified IDR entity determines whether the parties' dispute is eligible for IDR and then decides the amount owed to the provider by the insurer. *Id.* § 300gg-111(c)(5).

Plaintiffs are two air ambulance providers that underwent the IDR process with HCSC. Doc. 1, Compl., ¶¶ 11–12. Plaintiffs bring three claims against HCSC. Their first cause of action is brought under the NSA—they allege that HCSC failed to timely pay the awards determined by a certified IDR entity. *Id.* ¶¶ 15–17. Plaintiffs' second cause of action is brought under ERISA,

claiming that HCSC improperly denied benefits to its beneficiaries by failing to pay Plaintiffs the IDR awards. *Id.* ¶¶ 18–23. Plaintiffs' third claim is for unjust enrichment, arguing that Plaintiffs conferred a benefit on HCSC's beneficiaries, yet HCSC never paid for this benefit. *Id.* ¶¶ 24–29. HCSC moves to dismiss all of Plaintiffs' claims. Doc. 11, Mot., 1. The Court considers the Motion below.

## II.

## LEGAL STANDARDS

A.   *Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017) (citations omitted). Thus, courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (citations omitted). "If the record does not contain sufficient evidence to show that subject matter jurisdiction exists, a federal court does not have jurisdiction over the case." *Id.* (citation omitted). "Congress has plenary authority to regulate federal court jurisdiction and can withhold such jurisdiction at its discretion." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 269 (5th Cir. 2001).

B.   *Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont*

*Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (citation omitted).

## III.

## ANALYSIS

First, the Court concludes that Plaintiffs have failed to state a claim because the NSA does not confer a private cause of action to enforce an IDR award and convert that award to a final judgment. Second, the Court lacks subject-matter jurisdiction over Plaintiffs' ERISA claim because Plaintiffs do not have standing to bring that claim. Third, Plaintiffs did not state a claim for unjust enrichment, or quantum meruit, because they did not provide HCSC with any direct benefit.

A. *The NSA Does Not Provide an Express or Implied Cause of Action.*

Plaintiffs' first claim is brought pursuant to the NSA, seeking to enforce their IDR awards. However, the Court concludes that the NSA does not provide Plaintiffs with an express or implied cause of action to enforce IDR awards. Therefore, the Court dismisses Plaintiffs' first claim.

The Court first notes that the NSA does not contain any provisions expressly allowing Plaintiffs to file a lawsuit in federal court seeking to enforce an IDR award—thus, the NSA does not contain an express cause of action. In another statutory context, the Federal Arbitration Act ("FAA"), Congress expressly included a provision which enables a court to confirm, or enforce, arbitration awards. 9 U.S.C. § 9. The NSA does not contain any similar provision. Thus, the Court must determine whether the NSA contains an implied cause of action. While Plaintiffs argue that the language in the NSA gives the Court authority to enforce IDR awards without having to imply a cause of action, Doc. 12, Resp., 4–5, this assertion is simply incorrect.

To establish that the NSA contains an implied cause of action, Plaintiffs "must overcome the presumption that Congress did not intend to create a private cause of action." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). Here, the presumption against a statute containing a cause of action applies because the NSA does not contain an express cause of action. *See id.* A cause of action requires two things—a right and a remedy. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."). "Statutory intent on this latter point is *determinative*." *Id.* (emphasis added). So, the Court must look to the text of the NSA to determine whether Congress intended to create a private right and a private remedy. *See id.* While Plaintiffs

present compelling arguments that the NSA created a right, they fail to identify any "statutory intent" to create a remedy to enforce that right.

There is no language in the NSA establishing that Congress intended to create a remedy for out-of-network providers. At the outset, the Court will clarify the meaning of the term "remedy" as used in this context. While remedy often refers to the precise relief that a plaintiff is seeking, *see* REMEDY, Black's Law Dictionary (11th ed. 2019), the Supreme Court used the term differently in the context of determining whether Congress created an implied cause of action. "Remedy," as used in *Sandoval*, refers to a procedural mechanism which enables a party to enforce its rights. *See Sandoval*, 532 U.S. at 289–90; *see also Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 610 (S.D. Tex. 2023) ("And while *Sandoval* speaks in terms of legislative language establishing a remedy, it is actually singularly focused on the procedural cause of action, *not* the substantive remedy." (emphasis added)). With this distinction in mind, the Court concludes that the NSA does not create a procedural mechanism for Plaintiffs to enforce their IDR awards in federal court.

Perhaps the paradigm example of a statute containing an implied cause of action came in *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979). There, the Supreme Court determined that Title IX of the Civil Rights Act contained an implied cause of action in large part because Title IX included a fee-shifting provision that awarded attorneys' fees to prevailing parties. *Id.* at 699–700. Therefore, the Supreme Court held, the text of the statute indicated that Congress intended to create a private cause of action. *Id.* at 709.

Unlike Title IX, the NSA does not contain any fee-shifting provisions or any other language suggesting that Congress intended to confer a private cause of action to healthcare providers. In fact,

the NSA includes language that almost entirely prohibits judicial review of IDR decisions. The NSA states that IDR decisions "shall not be subject to judicial review" other than permitting courts to vacate IDR decisions under the same four grounds a court can vacate an arbitration award under the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *see also* 9 U.S.C. § 10(a). Including language almost entirely forbidding judicial review of IDR decisions strongly suggests that Congress did not intend to confer Plaintiffs a cause of action to enforce IDR awards.

Additionally, although Congress borrowed from § 10 of the FAA, it notably did not incorporate the FAA provision that enables parties to confirm arbitration awards, which further indicates that Congress did not intend to create a private cause of action under the NSA. The FAA expressly provides parties with a procedural mechanism to vacate, modify, and confirm arbitration awards in a federal court. 9 U.S.C. §§ 9–11. If Congress intended to create such a procedural mechanism under the NSA, it simply could have incorporated one more section from the FAA, yet Congress did not do so. The Court interprets this omission in the NSA to mean that Congress did not intend to create a remedy under the NSA. *Cf. Guardian Flight, LLC v. Aetna Health Inc.*, No. 4:22-CV-03805, 2024 WL 484561, at *4 (S.D. Tex. Jan. 5, 2024) (holding that only the vacatur section of the FAA applied to the NSA because Congress would have incorporated other FAA sections if it had intended to) (citation omitted). Therefore, not only is there no "statutory intent" to create a private remedy, *see Sandoval*, 532 U.S. at 286, but the NSA also includes language strongly suggesting that Congress did not intend to create a private remedy.

To the extent Plaintiffs are arguing that the NSA creates a right and thereby a remedy, this proposition is incorrect. Plaintiffs identify two textual provisions within the NSA to support the existence of a cause of action. First, the NSA states that any decision by a certified IDR entity "shall

be binding." Doc. 12, Resp., 3; 42 U.S.C. § 300gg–111(c)(5)(E)(i)(I). Second, the NSA includes a "Timing of Payment" provision which requires healthcare insurers to pay the IDR awards within thirty days. Doc. 12, Resp., 3; 42 U.S.C. § 300gg-112(b)(6). Plaintiffs argue that the "shall be binding" language and the "Timing of Payment" provision establish that Congress "clearly intended to create a private right of action to enforce the timely payment of IDR awards." Doc. 12, Resp., 7. The Court disagrees. While the NSA appears to create a right that out-of-network providers are entitled to recover their IDR awards within thirty days, these provisions, when read together, do not suggest that Congress intended to create a procedural mechanism for providers to convert IDR awards to final judgments. Further, there is no other language in the statute suggesting that Congress contemplated providers would be able to file a lawsuit to enforce IDR awards. In other words, these provisions only suggest that Congress created a right, but there is nothing to suggest that Congress also intended to confer a corresponding remedy.

Plaintiffs make several arguments for why Congress *should* have provided a private cause of action to enforce an IDR award. Doc. 12, Resp., 5. However, even if the Court found these policy arguments compelling, "courts may not create [a cause of action], no matter how desirable that might be as a policy matter." *Cantu v. Moody*, 933 F.3d 414, 424 (5th Cir. 2019) (alteration in original) (quoting *Sandoval*, 532 U.S. at 286–87).

In sum, the NSA does not contain an implied cause of action for out-of-network healthcare providers to enforce IDR awards. Because the NSA does not provide a private cause of action, Plaintiffs cannot state a claim under the NSA. Therefore, the Court grants HCSC's Motion to Dismiss with respect to Plaintiffs' NSA claim.

B.     *Plaintiffs Lack Standing to Bring Their ERISA Cause of Action.*

Plaintiffs' second cause of action is brought under ERISA, claiming that "HCSC improperly denied plan benefits by failing to pay [Plaintiffs] the IDR awards." Doc. 1, Compl., ¶ 21. Article III of the United States Constitution limits the subject-matter jurisdiction of the federal courts to certain "Cases" and "Controversies." U.S. CONST. art. III, § 2. "In an attempt to give meaning to Article III's 'case or controversy requirement,' the courts have developed a series of principles termed 'justiciability doctrines.'" *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). One such justiciability doctrine is standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"The essence of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citations omitted). There are three elements to constitutional standing: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *United States v. Hays*, 515 U.S. 737, 742–43 (1995) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted).

Here, Plaintiffs' ERISA claim asserts the rights of some of HCSC's beneficiaries. Several of HCSC's beneficiaries assigned some of their rights under their HCSC healthcare plans to Plaintiffs.

Doc. 1, Compl., ¶ 12. Because Plaintiffs received valid assignments from the beneficiaries, Plaintiffs "stand[] in the same position as [HCSC's beneficiaries] stood" with regards to standing. *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) (citation omitted). Thus, for Plaintiffs to have standing, they must show that the beneficiaries would have had standing to bring an ERISA claim to require HCSC to pay Plaintiffs the IDR awards. *See id.* The Court concludes that HCSC's beneficiaries would not have had standing to bring such a claim—therefore, Plaintiffs likewise lack standing.

The HCSC beneficiaries suffered no concrete injury from HCSC allegedly failing to pay IDR awards to Plaintiffs. As the Court discussed above, the passage of the NSA means that patients, like the HCSC beneficiaries, are no longer financially responsible for balance billing—i.e., the difference between the out-of-network provider's price and what the insurer agrees to cover. *See* 42 U.S.C. § 300gg-135. The HCSC beneficiaries would incur no financial injury from a dispute between HCSC and Plaintiffs because the beneficiaries do not have to pay the IDR awards. Plaintiffs likewise fail to assert any other non-financial injury that the HCSC beneficiaries would have suffered, thus the Court concludes the HCSC beneficiaries did not suffer any concrete injury. *See Lujan*, 504 U.S. at 561.

Plaintiffs argue that the HCSC beneficiaries suffered three separate concrete injuries. All three arguments lack merit. First, Plaintiffs argue that the HCSC beneficiaries' protections from balance billing, which are codified by statute in the NSA, are endangered "under numerous legal theories" if HCSC fails to pay the IDR awards. Doc. 12, Resp., 10. The Court rejects this argument as it is unaware of these "numerous legal theories" and Plaintiffs fail to elucidate which theories they are referring to. Second, Plaintiffs argue that the beneficiaries "risk higher premiums if their health

plans do not pay IDR awards." *Id.* In essence, Plaintiffs are arguing that, if HCSC does not pay the IDR awards, it will get sued by out-of-network healthcare providers, which will result in HCSC incurring litigation costs, and subsequently lead to HCSC increasing its beneficiaries' premiums. *See id.* This claimed injury is merely "conjectural or hypothetical" and falls far short of what is required for standing—a concrete injury. *See Hays*, 515 U.S. at 742–43. Third, Plaintiffs argue that the beneficiaries have an interest in their health plans paying Plaintiffs "so that air ambulance transports remain accessible and providers do not go bankrupt." Doc. 12, Resp., 10. Plaintiffs speculate that health insurance companies failing to pay IDR awards could force out-of-network air ambulance providers into bankruptcy, which could then injure the HCSC beneficiaries because they would not have access to air ambulance services if they later needed them. This argument fails because this injury is purely conjectural and thus fails to establish standing. *See Hays*, 515 U.S. at 742–43.

Plaintiffs lack standing to assert their ERISA claim because the HCSC beneficiaries did not suffer any concrete injury. Accordingly, the Court grants HCSC's Motion to Dismiss as to Plaintiffs' ERISA claim.

C.     *Plaintiffs Failed to State a Claim for Unjust Enrichment.*

Plaintiffs' third cause of action against HCSC is for unjust enrichment. Plaintiffs appear to advance two theories of unjust enrichment. First, Plaintiffs provided their air ambulance services to HCSC's beneficiaries, and HCSC never paid Plaintiffs, despite their beneficiaries receiving these benefits. Doc. 1, Compl., ¶ 25. Second, Plaintiffs argue that HCSC was "further unjustly enriched by receiving interest and/or investment income as a result of the unlawful retention of the [IDR awards]." *Id.* ¶ 28.

Most Texas courts have held that unjust enrichment is not an independent cause of action under Texas law. *Richardson Hosp. Auth. v Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.); *Watson v. City of San Marcos*, No. 03-22-00307-CV, 2023 WL 3010938, at *3 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (mem. op.); *Davis v. OneWest Bank, N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth, Apr. 9, 2015, pet. denied). However, the allegations in support of Plaintiffs' "unjust enrichment" claim roughly track the elements of a quantum meruit claim, which the Supreme Court of Texas has described as "an equitable theory founded in the principle of unjust enrichment." *Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 436 (Tex. 2023) (citations omitted); *see* Doc. 1, Compl., ¶¶ 25–29. To draw all reasonable inferences in favor of Plaintiffs, the Court construes Plaintiffs' unjust enrichment claim as a cause of action for quantum meruit. But even construed as such, Plaintiffs have not stated a claim for quantum meruit under either of their proposed theories.

1. <u>Plaintiffs Failed to State a Claim for Quantum Meruit Because They Did Not Provide a Direct Benefit to HCSC.</u>

Under Texas law, quantum meruit claims have four elements: "(1) valuable services were rendered or materials furnished; (2) for the defendant; (3) the services or materials were accepted by the defendant; and (4) the defendant was reasonably notified that the plaintiff performing the services or providing the materials was expecting to be paid." *Texas Med. Res.*, 659 S.W.3d at 436 (internal alterations omitted). To establish the second element, it is insufficient that HCSC merely benefitted from Plaintiffs' services. *Id.* Instead, Plaintiffs' "efforts must have been undertaken *for* the person sought to be charged." *Id.* (citations omitted) (emphasis in original).

Plaintiffs fail to state a claim for quantum meruit under their first theory because they did not provide their air ambulance services for HCSC's benefit. Healthcare providers generally cannot

maintain a quantum meruit claim against health insurance companies based on allegations that the providers performed services solely for the health insurance companies' insureds. *See Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Even if [the health insurance company] received some benefit as a result of [the healthcare provider] providing medical services to its insureds . . . [the healthcare provider's] services were rendered to and for its patients, not [the health insurance company]."); *see Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 432 (N.D. Tex. 2020) (Starr, J.) ("Serving a defendant's customers is hardly the same as serving the defendant itself." (emphasis omitted)). The parties do not dispute that it was HCSC's beneficiaries who received Plaintiffs' air ambulance services—HCSC never directly received these services. *Compare* Doc. 11, Mot., 19–20, *with* Doc. 12, Resp., 13–14. Therefore, Plaintiffs failed to plead that they rendered a valuable service to HCSC.

Plaintiffs do not argue that they provided a benefit directly to HCSC. Instead, Plaintiffs argue that "the NSA changed the provider-insurer landscape." Doc. 12, Resp., 13. They argue that because the NSA placed the payment obligation solely on health insurers, Plaintiffs should be able to maintain their quantum meruit claim against HCSC. *Id.* at 13–14. While they are correct that the NSA changed a beneficiary's obligations to out-of-network healthcare providers, *see* 42 U.S.C. § 300gg-135, the NSA is a federal statute, and it did not change the elements of a Texas tort. Just because Plaintiffs now must resolve payment disputes with health insurance companies instead of directly with the beneficiaries does not mean that healthcare providers now confer a benefit directly to a health insurance company by providing services to its insureds. Therefore, Plaintiffs failed to adequately plead an element of their quantum meruit claim. The Court grants HCSC's motion to dismiss with regards to the construed quantum meruit claim.

2. Plaintiffs Failed to State a Claim for Quantum Meruit Under Their Second Theory Because They Did Not Perform Any Services for HCSC.

Plaintiffs also allege that HCSC has been further unjustly enriched by receiving interest or investment income because it refused to timely pay the IDR awards. Doc. 1, Compl., ¶ 28. It is not entirely clear whether the interest on the allegedly withheld payments constitutes an entirely separate theory of unjust enrichment or whether this forms part of Plaintiffs' first theory of unjust enrichment—HCSC not paying for the benefits its beneficiaries received. *See* Doc. 12, Resp., 14. If the latter, Plaintiffs fail to state a claim because HCSC did not directly benefit from its insureds receiving the air ambulance services, as discussed above. If the former, Plaintiffs fail to adequately plead the first element of a quantum meruit claim because Plaintiffs did not perform any services for HCSC when HCSC allegedly withheld the IDR awards. *See Texas Med. Res.*, 659 S.W.3d at 436.

Accordingly, the Court grants HCSC's motion to dismiss the unjust enrichment claim to the extent Plaintiffs bring an additional unjust enrichment claim against HCSC for receiving interest or investment income from not timely paying the IDR awards.

D.   *The Court Denies Plaintiffs Leave to Amend Their Complaint.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

While Plaintiffs did not request leave to amend, the Court will nevertheless consider whether to grant them leave to do so. With regards to Plaintiffs' claim under the NSA, the Court finds leave to amend would be futile because the NSA does not contain a private cause of action for out-of-network healthcare providers to enforce IDR awards. *See Stripling*, 234 F.3d at 873. Thus, the Court denies Plaintiffs leave to amend their NSA claim. The Court also finds it would be futile to give Plaintiffs leave to amend their ERISA claim. Given the highly speculative injuries alleged, the Court is convinced that any amended complaint would also fail to allege facts establishing that HCSC's beneficiaries suffered a concrete injury from HCSC allegedly not paying Plaintiffs. *See id.* Accordingly, the Court dismisses Plaintiffs' ERISA claim without prejudice for lack of subject-matter jurisdiction and denies Plaintiffs leave to amend their ERISA claim. *See Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020) (holding that a district court should dismiss a case without prejudice when it lacks subject-matter jurisdiction over the dispute).

Lastly, the Court concludes that it would be futile to allow Plaintiffs to amend their unjust enrichment claim, which the Court construed as a quantum meruit claim. The Court finds that Plaintiffs would not be able to allege any facts to establish they provided any benefits directly to

HCSC, as necessary to maintain a quantum meruit claim. *See Stripling*, 234 F.3d at 873; *see Texas Med. Res.*, 659 S.W.3d at 436. Thus, this defect in the Plaintiffs' Complaint is incurable. *See Great Plains Tr. Co.*, 313 F.3d at 329. Accordingly, the Court denies Plaintiffs leave to amend their Complaint.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** HCSC's Motion to Dismiss (Doc. 11). Specifically, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claim under the NSA for failure to state a claim and **DENIES** Plaintiffs leave to replead their NSA claim. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' ERISA claim for lack of subject-matter jurisdiction and **DENIES** Plaintiffs leave to replead their ERISA claim. Lastly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claim for unjust enrichment and **DENIES** Plaintiffs leave to replead their unjust enrichment claim. A final judgment will follow.

SO ORDERED.

SIGNED: May 30, 2024.

*[signature]*
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE